UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                                          )
KATHRYN NURRE,                                            )
                                                          )      No. C06-901RSL
                                    Plaintiff,            )
                                                          )      ORDER GRANTING DEFENDANT'S
            v.                                            )      MOTION FOR SUMMARY
                                                          )      JUDGMENT AND DENYING
DR. CAROL WHITEHEAD, in her individual                   )      PLAINTIFF'S CROSS-MOTION FOR
and official capacity as the Superintendent of           )      SUMMARY JUDGMENT
Everett School District No. 2,                            )
                                                          )
                                    Defendant.            )
_____)

## I.  INTRODUCTION

This matter comes before the Court on "Defendant's Motion for Summary Judgment"

(Dkt. #8) (hereinafter "Motion") and "Plaintiff Nurre's Motion for Summary Judgment Under

CR 56(A)" (Dkt. #17) (hereinafter "Cross-Motion").  In June of 2006, the Henry A. Jackson

High School ("JHS") Wind Ensemble was not allowed to perform Franz Biebl's instrumental

arrangement of "Ave Maria" at the 2006 JHS graduation ceremony in Everett, Washington.

Plaintiff commenced this action claiming that defendant violated plaintiff's rights under the Free

Speech, Establishment, and Equal Protection Clauses of the United States Constitution by

prohibiting the performance of "Ave Maria."  For the reasons set forth below, the Court grants

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT

defendant's Motion and denies plaintiff's Cross-Motion.[1]

## II. DISCUSSION

**A.   Background**

In June of 2006, plaintiff was a senior at JHS, which is operated and controlled by Everett School District No. 2 (hereinafter the "School District").  See Dkt. #18 (Nurre Decl.) at ¶¶3-5[2]; Dkt. #5 at ¶4.  During plaintiff's senior year, and for the two prior school years, plaintiff was a member of the JHS Wind Ensemble (hereinafter "Wind Ensemble").  See Dkt. #18 at ¶7.  As in previous years, the Wind Ensemble was selected to perform at the 2006 JHS graduation ceremony.  Id. at ¶10.  From at least 2002, the Wind Ensemble's graduating seniors selected an instrumental piece that the Wind Ensemble performed at graduation.  See Dkt. #9, Ex. 3 (Moffat Dep.) at 17:4-15.  In 2003-2005, the Wind Ensemble's seniors selected "On a Hymnsong of Phillip Bliss," which was played at graduation.  Id. at 31-33.   In May 2006, the Wind Ensemble's seniors unanimously selected a different song to play at graduation:  an instrumental piece titled "Ave Maria"[3] composed by Franz Biebl.  Id. at 35; Dkt. #18 at ¶¶12-16.  The Wind Ensemble had previously played Franz Biebl's "Ave Maria" at a school music concert.  See Dkt.

---

[1]  Neither party requested oral argument under Local Civil Rule 7(b)(4).  Accordingly, the Court decides this matter on the memoranda, declarations, and exhibits submitted by the parties.

[2]  The Court denies defendant's motion to strike plaintiff Nurre's declaration given the representation that plaintiff physically signed her declaration when it was filed on April 24, 2007.  See Dkt. #27 n.3 (motion to strike); Dkt. #30 (Supplemental Declaration) at ¶¶2-3 (declaring that plaintiff physically signed her declaration when it was filed).

[3]  Under Fed. R. Evid. 201, the Court takes judicial notice that "Ave Maria" means "Hail Mary." See Webster's II New Riverside University Dictionary 141 (1984) (defining "Ave Maria" as "The Hail Mary."); Webster's Third New International Dictionary 150 (1981) (unabridged) (defining "ave maria" as "1. a salutation to the Virgin Mary combined as now used in the Roman Catholic Church with a prayer to her as mother of God."); Dkt. #9, Ex. 1 (Nurre Dep.) at 35:22-36:6; Dkt. #9 at Ex. 3 (Moffat Dep) at 59:22-24.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT                -2-

1  #19, Ex. A (Moffat Dep.) at 36:14-23.

2  After the selection of "Ave Maria," the Wind Ensemble's director, Lesley Moffat sent

3  copies of the music to be performed at graduation, including Biebl's "Ave Maria," to JHS's

4  Principal, Terry Cheshire, and to the School District's Associate Superintendent for Instruction,

5  Karst Brandsma.  See Dkt. #9, Ex. 3 (Moffat Dep.) at Dep. Ex. 5.  Principal Cheshire forwarded

6  this information to Lynn Evans, the School District's Executive Director of Instruction and

7  Curriculum.  See Dkt. #12 (Cheshire Decl.) at ¶3.  Ms. Evans, in turn, took the Wind

8  Ensemble's selection of  "Ave Maria" to her supervisor, Ms. Brandsma.  See Dkt. #11 (Evans

9  Decl.) at ¶3.  Thereafter, defendant Whitehead called a meeting with Ms. Brandsma and Ms.

10 Evans to discuss the Wind Ensemble's selection of "Ave Maria."  See Dkt. #9, Ex. 2 (Whitehead

11 Dep.) at 75:24-77:2.  At this meeting, the decision was made to "deny the request from the

12 students and the band teacher to play Ave Maria at the commencement."  Id. at 77:13-15.

13 Ms. Moffat was informed of this decision when she received a copy of an e-mail from

14 Ms. Brandsma "requesting that music selections for graduation be entirely secular in nature."

15 See Dkt. #19, Ex. A (Moffat Dep.) at 38-39; Dep. Ex. 4 (emphasis in original).  Ms. Moffat then

16 had a conversation with Principal Cheshire where Ms. Moffat asked whether it would be

17 permissible to change the name of the song or list the name of the song differently in the

18 program.  See Dkt. #12 (Cheshire Decl.) at ¶4.  Principal Cheshire responded to this request by

19 stating that "it would be unethical to inaccurately or untruthfully list the titles to pieces."  Id.;

20 Dkt. #9, Ex. 3 (Moffat Dep.) at 40-41.  Based on this decision, Ms. Moffat informed the Wind

21 Ensemble that they needed to select a different piece of music to play at graduation.  See Dkt.

22 #9, Ex. 3 (Moffat Dep.) at 41:15-42:5.  Ultimately, the Wind Ensemble's seniors selected the

23 fourth movement of the "Holst Second Suite in F," which was played at the JHS graduation on

24 June 17, 2006.  See id. at 42; Dkt. #10, Ex. 6 (2006 JHS graduation program listing the

25 performance of Gustav Holst's "Second Suite for Military Band").

26 ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT                     -3-

**B.     Analysis**

This matter comes before the Court on cross-motions for summary judgment on claims arising under 28 U.S.C. § 1983.  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A § 1983 claimant must prove "two essential elements:  1) that the Defendants acted under color of state law; and 2) that the Defendants caused [plaintiff] to be deprived of a right secured by the Constitution and the laws of the United States." Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997); 42 U.S.C. § 1983.  In her answer, defendant admits that she was acting under the color of the law of the State of Washington.  See Dkt. #5 (Answer) at ¶4; Dkt. #1 (Complaint) at ¶4.  Accordingly, the Court need only determine whether defendant deprived plaintiff of a constitutional right.[4]

**1.     Claim for declaratory relief**

As an initial matter, in her motion, defendant requests dismissal of plaintiff's claim for declaratory relief[5] as moot because plaintiff has graduated and will never again participate in an Everett School District graduation ceremony. See Motion at 11.  The Court agrees.  Now that plaintiff has graduated, her claims for declaratory relief are dismissed as MOOT.  See Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1099 (9th Cir. 2000) ("[A] student's graduation

---

[4] The Court also notes for the record that defendant "acknowledges Everett School District does not possess Eleventh Amendment immunity." See Motion at 13.

[5] Although not expressly identified as a claim for declaratory relief, the Court construes paragraph A in plaintiff's prayer for relief in the Complaint as a request for declaratory relief. See Dkt. #1 (Complaint) at 9, ¶A (requesting "that judgment be entered finding and concluding that the Defendant's refusal to allow the Plaintiff and the other senior members of the high school wind ensemble to perform Biebl's 'Ave Maria' at the June 17, 2006 graduation ceremony for Henry M. Jackson High School deprived the Plaintiff of her rights under the First and Fourteenth Amendments to the United States Constitution[.]").

moots his claims for declaratory and injunctive relief against school officials"); Doe v. Madison Sch. Dist. No. 321, 177 F.3d 789, 798 (9th Cir. 1999) ("[T]he student-plaintiff already has suffered any injury that would result from the alleged forced participation in prayers that were part of the student-plaintiff's graduation ceremony.  Because we cannot remedy the student-plaintiff's injury with injunctive or declaratory relief, the student-plaintiff's claims for those forms of relief are moot.").  This issue, however, is not dispositive in this case because plaintiff's claims for damages remain.  See Dkt. #1 at 9, ¶B; Doe, 177 F.3d at 798 ("A student's graduation moots claims for declaratory and injunctive relief, but it does not moot claims for monetary damages").  Therefore, the Court will review the merits of plaintiff's constitutional claims in light of the requested relief for damages.

### 2.    Qualified immunity for defendant as an individual[6]

Defendant claims she is immune from suit based on qualified immunity.  See Motion at 11.  The Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.  See Saucier v. Katz, 533 U.S. 194, 200 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings[.]").  Although "[q]ualified immunity shields public officials from money damages only," defendant's qualified immunity defense may resolve all the remaining claims in this action given the Court's ruling above that plaintiff's request for declaratory relief is moot.  Morse v. Frederick, 127 S. Ct. 2618, 2624 n.1 (2007) ("In this case, Frederick asked not just for damages, but also for declaratory and injunctive relief.  Justice Breyer's proposed decision on qualified immunity grounds would dispose of the damages claims, but Frederick's other claims would remain unaddressed.") (internal citation omitted).  For these reasons, the Court turns first

---

[6]  The Court considers plaintiff's claims against the School District separately in Section II.B.3, below.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT                -5-

1   to defendant's qualified immunity defense.

2       In reviewing a qualified immunity defense on a motion for summary judgment, the Court

3   is "required to view all facts and draw all reasonable inferences in favor of the nonmoving

4   party." Brosseau v. Haugen, 543 U.S. 194, 195 n.2 (2004) (per curium); see also Motley v.

5   Parks, 432 F.3d 1072, 1075 n.1 (9th Cir. 2005) (en banc) (accepting plaintiffs' recitation of the

6   facts because the case arose in the posture of a motion for summary judgment and involved

7   issues of qualified immunity). The Supreme Court in Saucier established a two-part test to

8   resolve claims of qualified immunity. Saucier, 533 U.S. at 201. In ruling on a qualified

9   immunity defense, "the first inquiry must be whether a constitutional right would have been

10  violated on the facts alleged; second, assuming the violation is established, the question whether

11  the right was clearly established must be considered[.]" Id. at 200; Cole, 228 F.3d 1101. The

12  two parts of this test are discussed, in the order required by Saucier, below.[7]

13              **a.    Was a constitutional right violated?**

14      In this case, plaintiff alleges violations of three distinct constitutional rights under: (1)

15  the First Amendment's Free Speech Clause; (2) the First Amendment's Establishment Clause;

16  and (3) the Fourteenth Amendment's Equal Protection Clause. See Dkt. #1 at 6-9. For clarity,

17  the Court separately considers defendant's qualified immunity defense as applied to these three

18  constitutional claims.

19              **(i).    Free Speech**

20      The threshold issue in determining whether plaintiff's free speech rights were violated by

21  defendant's prohibition of the performance of Franz Biebl's "Ave Maria" is whether this piece

22  of music is protected "speech" under the Free Speech Clause of the First Amendment, made

23  _____

24      [7] See Brosseau, 543 U.S. at 201 (Breyer, J., concurring) ("Saucier requires lower courts to
    decide (1) the constitutional question prior to deciding (2) the qualified immunity question."); accord
25  Scott v. Harris, 127 S. Ct. 1769, 1774 n.4 (2007).

26  ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT
    AND DENYING PLAINTIFF'S CROSS-
    MOTION FOR SUMMARY JUDGMENT          -6-

1  applicable to the states by the Fourteenth Amendment.  See U.S. Const. amend I ("Congress

2  shall make no law . . . abridging the freedom of speech[.]"); Lamb's Chapel v. Ctr. Moriches

3  Union Free Sch. Dist., 508 U.S. 384, 387 (1993).  Defendant contends that Franz Biebl's

4  instrumental version of "Ave Maria" is not "speech" because plaintiff has not shown that "'[a]n

5  intent to convey a particularized message was present, and [that] the likelihood was great that

6  the message would be understood by those who viewed it.'"  See Dkt. #27 at 6 (quoting Texas v.

7  Johnson, 491 U.S. 397, 404 (1989)).

8        In Ward v. Rock Against Racism, 491 U.S. 781, 790 (1989), the Supreme Court held that

9  music is protected "speech" under the First Amendment:

10       Music is one of the oldest forms of human expression.  From Plato's discourse in
         the Republic to the totalitarian state in our own times, rulers have known its
11       capacity to appeal to the intellect and to the emotions, and have censored musical
         compositions to serve the needs of the state. . . . The Constitution prohibits any
12       like attempts in our own legal order.  Music, as a form of expression and
         communication, is protected under the First Amendment.  In the case before us the
13       performances apparently consisted of remarks by speakers, as well as rock music,
         but the case has been presented as one in which the constitutional challenge is to
14       the city's regulation of the musical aspects of the concert; and, based on the
         principle we have stated, the city's guideline must meet the demands of the First
15       Amendment.

16  Id. at 790 (emphasis added, internal citation omitted).  While neither the Supreme Court nor the

17  Ninth Circuit has expressly held that instrumental music of the type involved[8] in this case is

18  "speech," other courts have held that instrumental music falls within the First Amendment's

19  purview.[9]

20  _____

21       [8] Plaintiff asserts that the title of the song, "Ave Maria," which would have been printed in the

22  graduation program, is not the speech at issue.  Instead, plaintiff contends that the speech at issue is only
     the "performance of Biebl's beautiful music."  See Dkt. #29 (Reply to Cross-Motion) at 4 ("The

23  expression at issue here is not the words 'Ave Maria' printed in the program, but the performance of
     Biebl's beautiful music.").

24
         [9] Legal scholarship appears to be silent on this specific issue.  See, e.g., Peter Meijes Tiersma,

25  Article:  Nonverbal Communication and the Freedom of "Speech," 1993 Wis. L. Rev. 1525, 1531 (1993)

26  ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT
    AND DENYING PLAINTIFF'S CROSS-
    MOTION FOR SUMMARY JUDGMENT          -7-

1    For example, Judge Posner, when analyzing the passage from <u>Ward</u> cited above, stated:

2    "The rock music in question [from <u>Ward</u>] had lyrics.  But the Court's reference in the second

3    sentence to music's appeal to the emotions, and its citation (omitted from the quotation [above])

4    to an article about Soviet ambivalence toward Stravinsky – a composer primarily of nonvocal

5    music – make it implausible to suppose that the Court thought it was speaking only of vocal

6    music; and it did not say it was. . . .  This court [the Seventh Circuit] has held that wordless

7    music is speech with the meaning of the [First] [A]mendment."  <u>Miller v. Civil City of S. Bend</u>,

8    904 F.2d 1081, 1096 (7th Cir. 1990) (Posner, J., concurring) (citing <u>Reed v. Village of</u>

9    <u>Shorewood</u>, 704 F.2d 943, 950 (7th Cir. 1983) ("[Defendants] would be infringing a First

10   Amendment right . . . even if the music had no political message – <u>even if it had no words</u> – and

11   the defendants would have to produce a strong justification for thus repressing a form of

12   'speech.'") (emphasis added); <u>see also</u> <u>Bernstein v. United States Dep't of State</u>, 922 F. Supp.

13   1426, 1435 (N.D. Cal. 1996) ("Music . . . is speech protected under the First Amendment.").

14   The Fifth Circuit has also concluded that instrumental music is covered by the First Amendment:

15   "'Speech,' as we have come to understand that word when used in our First Amendment

16   jurisprudence, extends to many activities that are by their very nature non-verbal:  an artist's

17   canvas, a <u>musician's instrumental composition</u>, and a protester's silent picket of an offending

18   entity <u>are all examples of protected, non-verbal 'speech</u>.'"  <u>Steadman v. Texas Rangers</u>, 179

19   F.3d 360, 367 (5th Cir. 1999) (emphasis added).

20   Finally, Supreme Court dictum indicates that instrumental compositions, like the

21   dodecaphonic music of Arnold Schoenberg, qualify for First Amendment protection.  <u>See</u> <u>Hurley</u>

22   <u>v. Irish-Am. Gay, Lesbian and Bisexual Group of Boston</u>, 515 U.S. 557, 569 (1995) ("[A]

23

24   ―――――――――

25   ("The communicative value of painting, sculpture, dancing, or instrumental music raises issues of
     aesthetic theory that I leave to those more competent in this area.").

26   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT
     AND DENYING PLAINTIFF'S CROSS-
     MOTION FOR SUMMARY JUDGMENT          -8-

narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schoenberg, or Jabberwocky verse of Lewis Carroll.") (emphasis added, internal citation omitted).

Based on this persuasive authority, the Court concludes that the Wind Ensemble's instrumental performance of Franz Biebl's "Ave Maria," constitutes "speech" under the First Amendment. Accordingly, the Court turns next to the issue of whether defendant's prohibition of this music at the JHS graduation ceremony violated plaintiff's free speech rights.

Both parties assert that in determining the First Amendment's reach in this case, the Court should look to the forum where the speech is presented.[10] A forum analysis is used as a "means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." Cornelius v. NAACP Legal Defense & Educ. Fund, Inc., 473 U.S. 788, 800 (1985). In this case, the forum analysis is applicable even though the graduation ceremony was held "off campus" at the Everett Events Center. See Summum v. Duchesne City, 482 F.3d 1263, 1270 (10th Cir. 2007) ("[A] First Amendment forum analysis may apply even when the government does not own the property at issue[.]"); Dkt. #10 at ¶3 ("Though the Everett School District does not own

---

[10] Although the Court considers the parties' forum analysis assertions, as the Court discusses in Section II.B.2.b below, based on Ninth Circuit authority, a forum analysis is not required to determine the viability of an Establishment Clause defense where the speech at issue bears the imprimatur of the school. See Cole, 228 F.3d at 1101 ("We conclude the District officials did not violate the students' freedom of speech. Even assuming the Oroville graduation ceremony was a public or limited public forum, the District's refusal to allow the students to deliver a sectarian speech or prayer as part of the graduation was necessary to avoid violating the Establishment Clause[.]"); Lassonde v. Pleasanton Unified Sch. Dist., 167 F. Supp. 2d 1108, 1112 n.4 ("Plaintiff and Defendants both devoted a significant amount of briefing to whether the Amador Valley High School graduation was a nonpublic or limited public forum. However, because the Ninth Circuit's controlling decision in Cole did not depend on the type of forum, this Court need not decide that question."), aff'd, 320 F.3d 979 (9th Cir. 2003).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT                    -9-

1  the Everett Events Center, it rents the facility and does sponsor and fund the graduation

2  ceremony[.]"); id. at Ex. 6 (2006 JHS graduation program).

3      The forum inquiry "divides government property into three categories:  public fora,

4  designated public fora, and nonpublic fora."  Children of the Rosary v. City of Phoenix, 154

5  F.3d 972, 976 (9th Cir. 1998).  A "pubic forum" is a place, such as a sidewalk or a park, that has

6  been traditionally open for public expression.  DiLoretto v. Downey Unified Sch. Dist. Bd. of

7  Educ., 196 F.3d 958, 964 (9th Cir. 1999).  A "designated public forum" is created when the

8  government intentionally opens a nontraditional form to public discourse.  Id.  All remaining

9  public property is characterized as nonpublic fora.  Id. at 965.  The Supreme Court has also

10 "identified another category – the 'limited public forum' – to describe a nonpublic forum that

11 the government intentionally has opened to certain groups or for the discussion of certain

12 topics."  Faith Ctr. Church Evangelistic Ministries v. Glover, 480 F.3d 891, 908 (9th Cir. 2007),

13 petition for cert. filed (U.S. Jun. 7, 2007) (No. 06-1633).

14      Where a forum is "public," such as a traditional or designated public forum, the ability of

15 the government to limit speech is "sharply circumscribed."  Id. at 907.  "Content-based

16 regulation is justified only when 'necessary to serve a compelling state interest and [when] it is

17 narrowly drawn to achieve that end,'" and "[c]ontent-neutral restrictions that regulate the time,

18 place, and manner of speech are permissible so long as they are 'narrowly tailored to serve a

19 significant government interest, and [they] leave open ample alternative channels of

20 communication.'"  Id. (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37,

21 45 (1983).  Speech in a nonpublic forum, however, is subject to less demanding scrutiny, "[t]he

22 challenged regulation need only be reasonable, as long as the regulation is not an effort to

23 suppress the speaker's activity due to disagreement with the speaker's view."  Int'l Soc. for

24 Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 679 (1992).  Limitations on speech in a

25 "limited-public forum" are subject to a separate test:   "[r]estrictions governing access to a

26 ORDER GRANTING DEFENDANT'S
   MOTION FOR SUMMARY JUDGMENT
   AND DENYING PLAINTIFF'S CROSS-
   MOTION FOR SUMMARY JUDGMENT          -10-

1  limited public forum are permitted so long as they are viewpoint neutral and reasonable in light

2  of the purpose served by the forum." <u>Glover</u>, 480 F.3d at 908.

3      In this case, defendant asserts that JHS's graduation ceremony was a nonpublic forum

4  because "parameters limited what music the wind ensemble could play." <u>See</u> Dkt. #32 at 4;

5  Motion at 17. In contrast, plaintiff asserts that the forum at issue is a "limited public forum."

6  <u>See</u> Dkt. #25 at 10. In making this assertion, plaintiff claims that the relevant forum for analysis

7  is not the entirety of the graduation ceremony, but rather "the Wind Ensemble performance

8  during the ceremony,"[11] and further contends that the forum question in this case involves a

9  disputed factual issue because "[a] reasonable trier of fact could conclude that the School

10  District opened the relevant forum for expression by a particular group, i.e., the Wind Ensemble

11  seniors, and thereby created a limited public forum." <u>See id.</u> at 9-10. On defendant's motion for

12  summary judgment based on qualified immunity, the Court is "required to view all facts and

13  draw all reasonable inferences in favor of the nonmoving party." <u>Brosseau</u>, 543 U.S. at 195 n.2.

14  Under this standard, in drawing all reasonable inferences in plaintiff's favor, the Court

15  concludes that for purposes of summary judgment there are sufficient facts showing that the

16  School District created a limited public forum when it allowed the Wind Ensemble's seniors to

17  choose the piece for performance at the JHS 2006 graduation.[12] <u>See</u> Dkt. #9, Ex. 3 (Moffat

18  Dep.) at 17:4-7 ("Q. Does the Jackson High School wind ensemble have a tradition of having

19

20      [11]  Modern forum jurisprudence reaches the Wind Ensemble's temporal performance of "Ave

21  Maria." <u>See</u> <u>Rosenberger v. Rector and Visitors of Univ. of Va.</u>, 515 U.S. 819, 830 (1995) ("The SAF

22  [Student Activities Fund] is a forum more in a metaphysical than in a spatial or geographic sense, but the
   same principles are applicable.").

23      [12]  In any event, in the reply filed in support of her Motion, defendant acquiesces to the Court's

24  determination of this dispute under the "limited public forum" standard. <u>See</u> Dkt. #32 at 4 ("But

25  regardless of whether this Court finds Jackson's graduation ceremony to be a nonpublic forum or a
   limited public forum, the distinction is without consequence.").

26  ORDER GRANTING DEFENDANT'S
   MOTION FOR SUMMARY JUDGMENT
   AND DENYING PLAINTIFF'S CROSS-
   MOTION FOR SUMMARY JUDGMENT    -11-

the seniors choose a final piece for the graduation.  A.  Yes."); Dkt. #18 (Nurre Decl.) at ¶11

("Part of this traditional [graduation] performance by the Wind Ensemble included having the

graduating seniors choose an instrumental piece to be performed at their graduation

ceremonies.").

But, even if the Wind Ensemble's performance constitutes a "limited public forum,"

defendant's prohibition on the performance of "Ave Maria" is not a violation of plaintiff's free

speech rights if the restriction is viewpoint neutral and reasonable in light of the purpose of the

forum.  Glover, 480 F.3d at 908.  In determining whether the restriction is viewpoint neutral, the

Court must identify whether exclusion of "Ave Maria" is "content discrimination, which may be

permissible if it preserves the purpose of [the] limited forum, [or] viewpoint discrimination,

which is presumed impermissible when directed against speech otherwise within the forum's

limitations."  Id. at 911 (quoting Rosenberger, 515 U.S. at 829-30).

"Content discrimination occurs when the government chooses the subjects that may be

discussed, while viewpoint discrimination occurs when the government prohibits speech by

particular speakers, thereby suppressing a particular view about a subject."  Giebel v. Sylvester,

244 F.3d 1182, 1188 (9th Cir. 2001) (internal quotation marks omitted).  The Ninth Circuit has

noted that the "distinction between regulation on the basis of subject matter or viewpoint,

however, 'is not a precise one.'"  Glover, 480 F.3d at 912 (quoting Rosenberger, 515 U.S. at

831).  In drawing the distinction between content and viewpoint restrictions, the Ninth Circuit

has held that the "test is whether the government has excluded perspectives on a subject matter

otherwise permitted by the forum."  Id.  (emphasis added).

In this case, the Court finds that exclusion of "Ave Maria" was based on permissible

content restriction, not impermissible viewpoint discrimination.[13]  The prohibition of the

performance of "Ave Maria" was based on a decision to keep religion out of graduation as a

whole, not to discriminate against a specific religious sect or creed.  Ms. Brandsma's e-mail sent

to the School District's principals illustrates this point:

> I am requesting that music selections for graduation be entirely secular in nature.
> My rationale is based on the nature of the event.  It is a commencement program in
> celebration of senior students earning their high school diploma.  It is not a music
> concert.  Musical selections should add to the celebration and should not be a
> separate event.  Invited guests of graduates are a captive audience.  I understand
> that attendance maybe [sic] voluntary, but I believe that few students (and their
> invited guests) would want to miss the culminating event of their academic career.
> And lastly there is insufficient time at graduation to balance comparable artistic
> works.

See Dkt. #10 (Brandsma Decl.) Ex. 7 (emphasis in original).[14]  As Ms. Brandsma explained in

her declaration, the purpose of this June 2, 2006 e-mail was to "remind them [the District

principals] that all pieces for graduation should be secular, providing additional information why

religion had to [be] kept out of graduation." Id. (Brandsma Decl.) at ¶6.  This understanding is

further reinforced by defendant's deposition testimony, where she stated:  "[W]e made the

decision that because the title of the piece would be on the program and it's Ave Maria and that

many people would see that as religious in nature, that we would ask the band to select

something different."  Dkt. #9, Ex. 2 (Whitehead Dep.) at 76:23-77:2 (emphasis added).

The case would be different if the exclusion had been based on excluding a particular

religious sect or creed.   However, the Court finds that the blanket restriction on the exclusion of

religious music that occurred in this case is one based on content, not viewpoint.  See Glover,

---

[13]  Even if the restriction was not viewpoint neutral, as explained below in Section II.B.2.b, it was
not clearly established that defendant's interest in avoiding an Establishment Clause violation in the
context of this case was a knowing violation of the law.

[14]  Although the e-mail does not reference the performance of "Ave Maria," plaintiff concedes that
this e-mail was in direct reference to the Wind Ensemble's selection of "Ave Maria."  See Dkt. #25 at 11
n.3.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT                    -13-

480 F.3d at 915 ("If the County had, for example, excluded from its forum religious worship services by Mennonites, then we would conclude that the County had engaged in unlawful viewpoint discrimination against the Mennonite religion.  But a blanket exclusion of religious worship services from the forum is one based on the content of speech."); cf. Rosenberger, 515 U.S. at 831 ("By the very terms of the SAF prohibition, the University does not exclude religion as a subject matter, but selects for disfavored treatment those student journalistic efforts with religious editorial viewpoints.").[15]

The Court also finds, as discussed below in the context of an "Establishment Clause defense," that the prohibition on the performance of "Ave Maria" was reasonable in light of the purposes of the 2006 JHS graduation ceremony.[16]  See Section II.B.2.b, infra.  As a result, under the forum analysis, the Court concludes that defendant's restriction was viewpoint neutral and reasonable.  Accordingly, defendant did not violate plaintiff's rights under the Free Speech Clause of the First Amendment by prohibiting the performance of "Ave Maria" at the 2006 JHS graduation ceremony.[17]

---

[15]  Plaintiff's case is further weakened in this regard by the fact that she appears to have no religious viewpoint on the performance of "Ave Maria."  See Section II.B.2.a.(ii), infra.

[16]  Although the forum at issue is that portion of the 2006 graduation ceremony pertaining to the Wind Ensemble's performance, examining the graduation ceremony as a whole is relevant in evaluating the reasonableness of defendant's action in denying the performance of "Ave Maria."  See, e.g., Glover, 480 F.3d at 910 ("Although the actual forum is a library meeting room, the nature and function of the County's public library as a whole is relevant in evaluating the reasonableness of the County's exclusions.").

[17]  The Court finds that the policies and procedures adopted by the School District are not controlling in this matter because they do not expressly address the issue of permitted musical performances at graduation.  See Dkt. #10, Exs. 1-4.  Section I of Procedure 2340P, for example, refers to the use of "religious music or literature" at "choral or musical assemblies," not specifically at graduation.  Id., Ex. 2 at 2.  The only policy or procedure expressly addressing graduation states: "Neither the District nor individual schools shall conduct or sanction invocations, benedictions or prayer at any school activities including graduation."  Id. at 3.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT                   -14-

1

2     **(ii).   Establishment Clause**

        In her Complaint, plaintiff claims that defendant's "decision to forbid the Plaintiff and

3     other senior members of the high school wind ensemble from performing Biebl's 'Ave Maria'

4     demonstrated a hostility to and bias against religion in violation of the Establishment Clause of

5     the First Amendment to the United States Constitution."  See Dkt. #1 at ¶27.[18]  "Notwithstanding

6     its 'checkered career,' Lemon v. Kurtzman, 403 U.S. 602 (1971), continues to set forth the

7     applicable constitutional standard for assessing the validity of governmental actions challenged

8     under the Establishment Clause."  Vasquez v. Los Angeles County, 487 F.3d 1246, 1254 (9th

9     Cir. 2007) (citing Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 319 (2000) (Rehnquist, C.J.,

10    dissenting) (noting the Lemon test's "checkered career in the decisional law of [the Supreme

11    Court]").  The "Lemon test" is appropriate to apply to plaintiff's Establishment Clause claim

12    because it "accommodates the analysis of a claim brought under a hostility to religion theory."

13    Am. Family Ass'n, Inc. v. City & County of San Francisco, 277 F.3d 1114, 1121 (9th Cir.

14    2002).  Under the Lemon test, a government act is consistent with the Establishment Clause if it:

15    (1) has a secular purpose; (2) has a principal or primary effect that neither advances nor

16    disproves of religion; and (3) does not foster excessive governmental entanglement with religion.

17    See Lemon, 403 U.S. at 612-13; Vasquez, 487 F.3d at 1255.

18         Under the first part of the Lemon test, the Court determines whether defendant's act of

19    prohibiting "Ave Maria" was grounded in a secular purpose.  "Governmental actions taken to

20    avoid potential Establishment Clause violations have a valid secular purpose under Lemon."

21    Vasquez, 487 F.3d at 1255 (emphasis added).  This rule makes sense because "Establishment

22

23         [18]  In a footnote, plaintiff suggests that defendant's alleged hostility toward the performance of
      "Ave Maria" was the result of defendant's religious beliefs.  See Dkt. #17 n.5.  Also in a footnote,

24    defendant moves to strike this reference.  See Dkt. #27 at n.9.  The Court denies the motion to strike as
      moot because "deletion or retention of the material would in no way affect the outcome of this case."  In

25    re Roosevelt, 220 F.3d 1032, 1040 n.15 (9th Cir. 2000).

26    ORDER GRANTING DEFENDANT'S
      MOTION FOR SUMMARY JUDGMENT
      AND DENYING PLAINTIFF'S CROSS-
      MOTION FOR SUMMARY JUDGMENT          -15-

1    Clause jurisprudence would be unworkable if it were any other way:  'For this court . . . to hold

2    that the removal of . . . objects to cure an Establishment Clause violation would itself violate the

3    Establishment Clause would . . . result in an inability to cure an Establishment Clause violation

4    and thus totally eviscerate the [E]stablishment Clause." Id. at 1256 n.8 (quoting McGinley v.

5    Houston, 282 F. Supp. 2d 1304, 1307 (M.D. Ala. 2003), aff'd, 361 F.3d 1328 (11th Cir. 2004)

6    (ellipsis and alterations in original)).  The Court finds that defendant's action was motivated by

7    an effort to avoid a potential Establishment Clause violation.  See Dkt. #9, Ex. 2 (Whitehead

8    Dep.) at 34:18-20 (Q.  Where did you obtain your information that the commencement was

9    required to be a neutral setting?  A.  From the Supreme Court decision about commencement

10   [Lee v. Weisman, 505 U.S. 577 (1992)].");  Dkt. #10 (Brandsma Decl.) at ¶6 (stating that the

11   purpose of the June 2006 e-mail was to provide "information why religion had to [be] kept out

12   of graduation.");  see also section II.B.2.b, infra.  Therefore, defendant's action satisfies the first

13   part of Lemon's test.

14         The Lemon test's second part prohibits government action that has the "principal or

15   primary effect" of advancing or disapproving religion.  See Lemon, 403 U.S. at 612; Am. Family

16   Ass'n, Inc., 277 F.3d at 1122.  The Ninth Circuit has "noted that 'because it is far more typical

17   for an Establishment Clause case to challenge instances in which the government has done

18   something that favors religion or a particular religious group, [there is] little guidance

19   concerning what constitutes a primary effect of inhibiting religion.'" Vasquez, 487 F.3d at 1256

20   (quoting Am. Family Ass'n, Inc., 277 F.3d at 1122).  In Vasquez, the Ninth Circuit held that an

21   action does not violate the second part of the Lemon test if the action "could not 'reasonably be

22   construed to send as its primary message the disapproval of plaintiff's religious beliefs." Id. at

23   1257 (quoting Vernon v. City of Los Angeles, 27 F.3d 1385, 1399 (9th Cir. 1994) (emphasis in

24   original, alteration omitted)).  Like in Vasquez, the Court here finds that a "reasonable observer"

25   familiar with the history and controversy surrounding religious speech at graduation exercises

26   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT
     AND DENYING PLAINTIFF'S CROSS-
     MOTION FOR SUMMARY JUDGMENT                    -16-

would not perceive the primary effect of defendant's action as one of hostility toward religion. "Rather, it would be viewed as an effort by Defendant[] to comply with the Establishment Clause and to avoid unwanted future litigation." Id. at 1257; see Dkt. #10 (Brandsma Decl.) at ¶4 (describing the "complaints from those in attendance and letters to the editor [that] appeared in the Everett Herald (Snohomish County's largest newspaper) as a result of the religious music ["Up Above My Head"] that was performed at the 2005 graduation."); id. at Ex. 5 (JHS 2005 graduation program listing performance of "Up Above My Head"); Dkt. #9, Ex. 4 (Everett Herald June 26, 2005 letter to the editor from a concerned citizen titled Religious song had no place at event).

Finally, the last part of the Lemon test prohibits government action that fosters "excessive government entanglement with religion." See Lemon, 403 U.S. at 613. In her response, plaintiff did not articulate how defendant's action caused excessive entanglement with religion. See Dkt. #25. Additionally, given plaintiff's stance on the lack of religious content of "Ave Maria," the Court finds that plaintiff cannot show that excessive entanglement occurred. Plaintiff's Establishment Clause claim is premised on the fact that the government may not exhibit a hostility toward religion. The claim might be stronger if plaintiff believed that the performance of Biebl's "Ave Maria" conveyed a religious message. But, she does not. In plaintiff's declaration in support of her Cross-Motion, she states: "The other seniors and I did not choose the 'Ave Maria' piece because of any religious message it might convey. Rather, the seniors chose it because of its beauty, we liked how it sounded and the performance would have made our graduation a memorable one." See Dkt. #18 (Nurre Decl.) at ¶¶17-18. Based on this, plaintiff cannot take the position that defendant acted with hostility toward religion or the School District's action fostered "excessive entanglement with religion" when plaintiff does not assert that the speech that was excluded conveyed a religious message. Therefore, under Lemon, defendant is entitled to summary judgment on plaintiff's Establishment Clause claim.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT

-17-

1                         **(iii).   Equal Protection**

2         Finally, in her Complaint plaintiff alleges that "Defendant Whitehead's decision to forbid

3  the Plaintiff and other senior members of the high school wind ensemble from performing

4  Biebl's 'Ave Maria' at the high school graduation ceremony . . . deprives the Plaintiff and the

5  other senior wind ensemble members of equal protection of the law guaranteed by the

6  Fourteenth Amendment to the United States [Constitution]."  Dkt. #1 at ¶32.  In her Complaint,

7  however, plaintiff does not articulate how or why defendant's action was a violation of

8  plaintiff's equal protection rights.

9         In considering a challenge under the Equal Protection Clause, the Court must first

10  determine what level of scrutiny to apply "depending upon the interest affected or the

11  classification involved."  <u>Dunn v. Blumstein</u>, 405 U.S. 330, 335 (1972).  The Supreme Court has

12  "repeatedly held that a classification neither involving fundamental rights nor proceeding along

13  suspect lines cannot run afoul of the Equal Protection Clause if there is a rational relationship

14  between disparity of treatment and some legitimate governmental purpose."  <u>Central State Univ.</u>

15  <u>v. Am. Ass'n of Univ. Professors</u>, 526 U.S. 124, 128 (1999) (quotation marks, citation, and

16  alteration omitted); <u>Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of</u>

17  <u>Psychology</u>, 228 F.3d 1043, 1049 (9th Cir. 2000) ("To withstand Fourteenth Amendment

18  scrutiny, a statute is required to bear only a rational relationship to a legitimate state interest,

19  unless it makes a suspect classification or implicates a fundamental right.") (citing <u>City of New</u>

20  <u>Orleans v. Dukes</u>, 427 U.S. 297, 303 (1976) (per curium) (equal protection).

21         Plaintiff clarifies her equal protection theory in her response to defendant's motion for

22  summary judgment where she states:  "Nurre and her Wind Ensemble classmates were singled

23  out for different treatment because, unlike previous senior classes, their choice of a performance

24  piece at graduation was not allowed.  This different treatment was not reasonable or

25  rational[.]").  Dkt. #25 at 22-23.  In support of this theory, plaintiff relies on the Supreme

26  ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT       -18-

Court's "class of one" equal protection jurisprudence, quoting <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000), where the Supreme Court stated:

> Our cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been <u>intentionally treated differently</u> from others similarly situated <u>and that there is no rational basis for the difference in treatment</u>.  In so doing, we have explained that the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.

<u>Id.</u> at 564-65 (internal citations and quotation marks omitted, emphasis added); Dkt. #25 at 22.

Accordingly, in assessing plaintiff's Equal Protection claim, the Court applies a rational basis standard of review because plaintiff has not shown that:  (1) the defendant deprived plaintiff of a fundamental right,[19] or (2) the alleged classification proceeded  "along suspect lines."  Instead, plaintiff bases her Equal Protection claim on the "class of one" theory, which requires only rational basis review.

As discussed above in Section II.B.2.a.(ii) and below in Section II.B.2.b, given the School District's Establishment Clause concerns over the performance of "Ave Maria" at the graduation ceremony, the Court finds that defendant had a rational basis for treating the 2006 Wind Ensemble's selection of "Ave Maria" differently from the 2003-2005 Wind Ensemble's selection of David Holisnger's "On a Hymnsong of Philip Bliss."  <u>See</u> Dkt. #10, Ex. 5 (2005 JHS graduation program); Dkt. #9, Ex. 3 (Moffat Dep.) at 31:22-33:4.  Therefore, the Court concludes that defendant did not violate plaintiff's equal protection rights and grants defendant's motion for summary judgment on this claim.

### b.     Whether the rights were clearly established

Although the Court's conclusion above that plaintiff's constitutional rights were not

---

[19]  Plaintiff has not identified any authority where the right to play "beautiful music" has been held to be "fundamental."

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT                    -19-

1   violated entitles Dr. Whitehead to qualified immunity as an individual defendant, for the record,

2   the Court also grants defendant's motion for summary judgment on qualified immunity for the

3   separate reason that it was not clearly established that defendant's actions were unlawful.  See

4   Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the

5   allegations established, there is no necessity for further inquires concerning qualified

6   immunity.").  "The Supreme Court has provided little guidance as to where courts should look to

7   determine whether a right was clearly established at the time of the injury."  Boyd v. Benton

8   County, 374 F.3d 773, 781 (9th Cir. 2004).  In the Ninth Circuit, the Court first looks to binding

9   precedent by the Supreme Court or this Circuit to determine whether a right was clearly

10  established.  Id.  In the absence of binding precedent, the Court is instructed to "'look to

11  whatever decisional law is available to ascertain whether the law is clearly established' for

12  qualified immunity purposes, 'including decisions of state courts, other circuits, and district

13  courts.'"  Id. (citing Drummond v. City of Anaheim, 343 F.3d 1052, 1060 (9th Cir. 2003).

14       Qualified immunity protects "all but the plainly incompetent or those who knowingly

15  violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "A reasonable belief that the

16  conduct was lawful is sufficient to secure qualified immunity."  McDade v. West, 223 F.3d

17  1135, 1142 (9th Cir. 2000) (citation omitted).  This case implicates the difficult intersection of

18  the First Amendment's Free Speech and Establishment Clauses.  "That the Constitution requires

19  toleration of speech over its suppression is no less true in our Nation's schools.  But the

20  Constitution also demands that the State not take action that has the primary effect of advancing

21  religion.  The introduction of religious speech into the public schools reveals the tension

22  between these two constitutional commitments, because the failure of a school to stand apart

23  from religious speech can convey a message that the school endorses rather than merely tolerates

24  that speech."  Bd. of Educ. of the Westside Cmty. Sch. v. Mergens, 496 U.S. 226, 263-64

25  (1990) (Marshall, J., concurring) (internal citations omitted).  Recognizing this tension, the

26  ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT
    AND DENYING PLAINTIFF'S CROSS-
    MOTION FOR SUMMARY JUDGMENT          -20-

Supreme Court "suggested in <u>Widmar v. Vincent</u>, 454 U.S. 263, 271 (1981), that the interest of the State in avoiding an Establishment Clause violation 'may be [a] compelling' one justifying an abridgment of free speech otherwise protected by the First Amendment." <u>Lamb's Chapel</u>, 508 U.S. at 394.  Later, in <u>Good News Club v. Milford Central Sch.</u>, 533 U.S. 98, 113 (2001), the Supreme Court stated "<u>it is not clear</u> whether a State's interest in avoiding an Establishment Clause violation would justify viewpoint discrimination." <u>Id.</u>  (emphasis added) (citing <u>Lamb's Chapel</u>, 508 U.S. at 394-95 (noting the suggestion in <u>Widmar</u> but ultimately not finding an Establishment Clause problem)).  In both <u>Good News Club</u> and <u>Lamb's Chapel</u>, the Supreme Court did not reach the issue of the government's interest in avoiding an Establishment Clause violation because under the facts of these two cases, "'there would have been no realistic danger that the community would think that the District was endorsing religion or any particular creed.'" <u>Good News Club</u>, 533 U.S. at 113 (quoting <u>Lamb's Chapel</u>, 508 U.S. at 395).  In <u>Good News Club</u>, the Court reasoned that "[b]ecause Milford [the School District] has not raised a valid Establishment Clause claim, we do not address the question whether such a claim could excuse Milford's viewpoint discrimination."). <u>Id.</u> at 120.

As a result, "[t]he Supreme Court observe[d] in <u>Good News Club</u> that the question 'whether a State's interest in avoiding an Establishment Clause violation would justify viewpoint discrimination' is an open one." <u>Hills v. Scottsdale Unified Sch. Dist.</u>, 329 F.3d 1044, 1053 n.7 (9th Cir. 2003) (quoting <u>Good News Club</u>, 533 U.S. at 113).  The question, however, is not an open one in the Ninth Circuit. <u>Id.</u>  The Ninth Circuit has "recognized that Establishment Clause concerns can justify speech restrictions 'in order to avoid the appearance of government sponsorship of religion.'" <u>Hills</u>, 329 F.3d at 1053 (quoting <u>Lassonde</u>, 320 F.3d at 983-85; citing <u>Cole</u>, 228 F.3d at 1103-05, and <u>Prince v. Jacoby</u>, 303 F.3d 1074, 1082 (9th Cir. 2002)).  This line of jurisprudence has been loosely referred to as the "Establishment Clause defense." <u>See</u>

1  Hills, 329 F.3d 1053.[20]

2      In this case, given the graduation context, the Wind Ensemble's performance of "Ave

3  Maria" would have appeared to be the School District's speech not the "private speech" of the

4  plaintiff or the Wind Ensemble.  See Hazelwood v. Kuhlmeier, 484 U.S. 260, 271 (1988)

5  (discussing in the free speech context the control over "expressive activities that students,

6  parents, and members of the public might reasonably believe to bear the imprimatur of the

7  school").  Although plaintiff asserts that graduation is not a "magic" setting, both the Supreme

8  Court and the Ninth Circuit have underscored the significance of the graduation context.  See

9  Dkt. #29 at 10 ("[T]here is nothing magic about graduation ceremonies[.]").  In Lee v. Weisman,

10  505 U.S. 577, 597 (1992), the Supreme Court noted that "[a]t a high school graduation, teachers

11  and principals must and do retain a high degree of control over the precise contents of the

12  program, the speeches, the timing, the movements, the dress, and the decorum of the students."

13  Given this control over graduation, the Ninth Circuit has concluded that:  "the essence of

14  graduation is to place the school's imprimatur on the ceremony – including the student speakers

15  that the school selected."  Lassonde, 320 F.3d at 985.  In this unique context, the Ninth Circuit

16  concluded in Cole that "the District's plenary control over the graduation ceremony, especially

17  the student speech, makes it apparent [that the sectarian] speech would have borne the imprint of

18  the District."  Cole, 228 F.3d at 1103.  Therefore, speech at graduation may be considered state-

19  _____

20      [20] "Establishment Clause defense" jurisprudence in the Ninth Circuit suggests that the "defense"
does not apply unless the school district proves that the Establishment Clause would have been violated

21  had the activity at issue been allowed to proceed.  See Hills, 329 F.3d at 1053 ("The District has not,
however, demonstrated that the Establishment Clause would be violated if it permitted distribution of

22  literature that advertised religious programs or events."); Cole, 228 F.3d at 1102 ("[I]t is clear the
District's refusal to allow Cole to deliver a sectarian invocation as part of the graduation ceremony was

23  necessary to avoid an Establishment Clause violation.").  If the Establishment Clause "defense" is to
provide any meaningful shelter for a school district, however, the defense should not depend on a

24  hindsight determination by the court, but rather on the reasonableness of the school district's belief at the
time that an activity would violate the Establishment Clause.

25

26  ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT

1  sponsored as opposed to "private speech."  See Mergens, 496 U.S. at 250 ("[T]here is a crucial

2  difference between government speech endorsing religion, which the Establishment Clause

3  forbids, and private speech endorsing religion, which the Free Speech and Free Exercise Clauses

4  protect.").

5       Where speech bears the imprimatur of the school, the school has an interest in avoiding a

6  conflict with the Establishment Clause.  In Cole, for example, the Ninth Circuit held that the

7  "school district had to sensor the [sectarian] speech in order to avoid the appearance of

8  government sponsorship of religion," and because "allowing the speech would have had an

9  impermissibly coercive effect on dissenters, requiring them to participate in a religious practice

10  even by their silence." Lassonde, 320 F.3d at 983.

11       In this case, the Court finds that the Wind Ensemble's performance of "Ave Maria"

12  would have borne the imprimatur of the school because the performance took place at

13  graduation, the School District exercised control over the performance by placing restrictions on

14  its content, and the performance was by the "Jackson Band" as listed in the 2006 JHS graduation

15  program."  See Dkt. #10, Ex. 6 (2006 graduation program); Dkt. #12 (Cheshire Decl.) at ¶2

16  ("After that graduation [in 2005], it was made clear to me that I was to review all music

17  selections, especially in connection with commencement ceremony.").  Given the graduation

18  context in this case, the facts here are distinguishable in a "fair way" from the Supreme Court's

19  "equal access" cases in Widmar, Good News Club, and Lamb's Chapel because in those cases

20  the Court held that there was no realistic danger that the community would think that the district

21  was endorsing the activity.  See Lamb's Chapel, 508 U.S. at 395; Saucier, 533 U.S. at 202-03.

22       As the Court found above, defendant's purpose in restricting the speech was to avoid a

23  conflict with the Establishment Clause.  See Section II.B.2.a.(ii), supra.  Given the Ninth

24  Circuit's precedent in Cole and Lassonde, and in light of the district's Establishment Clause

25  concerns, the Court cannot say that the contours of plaintiff's rights in the context of a

26  ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT                    -23-

1  graduation ceremony were "sufficiently clear" that defendant would understand that by

2  prohibiting the performance of "Ave Maria" defendant was knowingly violating the law.  See

3  Saucier, 533 U.S. at 202 ("The contours of the right must be sufficiently clear that a reasonable

4  official would understand that what he is doing violates that right.").  To be sure, the

5  Establishment Clause conflict was much greater with the proselytizing speeches in Cole and

6  Lassonde.  See Lassonde, 320 F.3d at 983.  But, the Supreme Court has stated that "[t]he

7  Establishment Clause proscribes public schools from 'conveying or attempting to convey a

8  message that religion or a particular religious belief is favored or preferred[.]'".  Lee, 505 U.S.

9  at 604-05 (Blackmun, J., concurring) (emphasis in original) (quoting County of Allegheny v.

10  ACLU, Greater Pittsburgh Chapter, 492 U.S. 573, 593 (1989)).  Here, while plaintiff asserts

11  "that there was no reasonable basis for forbidding the Wind Ensemble to perform 'Ave Maria'"

12  the Court concludes that defendant's prohibition was not clearly unlawful given the hazy border

13  between the Establishment Clause and Free Speech Clause in the high school graduation

14  context.[21]  See Cross-Motion at 13.  In cases like this one, school administrators run the risk of

15  being whipsawed by the First Amendment's Free Speech and Establishment Clauses.  See, e.g.,

16  Dkt. #10 (Brandsma Decl.) at ¶4 (describing the complaints from the performance of "Up Above

17  My Head").  "School [superintendents] have a difficult job" and "the law should not demand

18  that they fully understand the intricacies of [the Supreme Court's] First Amendment

19  jurisprudence."  Morse, 127 S. Ct. at 2629, 2639 (Breyer, J., concurring in the judgment in part

20

21  [21]  Under the forum analysis, restricting the religious subject matter on Establishment Clause
   grounds was reasonable in light of the graduation context.  See DiLoreto, 196 F.3d at 967 ("In a
22  nonpublic forum opened for a limited purpose, restrictions on access 'can be based on subject matter . . .
   so long as the distinctions drawn are reasonable in light of the purpose served by [the] forum' and the
23  surrounding circumstances.") (quoting Cornelius, 473 U.S. at 806, 809)); Glover, 480 F.3d at 920 ("We
   see nothing wrong with the County excluding certain subject matter or activities that it deems
24  inconsistent with the forum's purpose, so long as the County does not discriminate against a speaker's
   viewpoint.").
25

26  ORDER GRANTING DEFENDANT'S
   MOTION FOR SUMMARY JUDGMENT
   AND DENYING PLAINTIFF'S CROSS-
   MOTION FOR SUMMARY JUDGMENT          -24-

1    and dissenting in part).  Therefore, the Court cannot say that defendant was "plainly

2    incompetent" or "knowingly violate[d] the law" by assuming that her actions restricting "Ave

3    Maria" were proper under the Establishment Clause.  See Malley, 475 U.S. at 341.  For this

4    reason, the Court concludes that defendant as an individual is entitled to qualified immunity on

5    plaintiff's free speech claim.          Similarly, the Court concludes that defendant is entitled to

6    qualified immunity on plaintiff's Establishment Clause claim because the Court has been unable

7    to find authority clearly establishing that defendant was acting with hostility toward religion in

8    violation of the Establishment Clause by prohibiting the performance of "Ave Maria" at a

9    graduation ceremony.  Plaintiff's reliance on the out-of-circuit authority of Stratechuk v. Bd. of

10   Educ. of S. Orange-Maplewood Sch. Dist., 200 Fed. Appx. 91 (3d Cir. 2006), Doe v.

11   Duncanville Indep. Sch. Dist., 70 F.3d 402 (5th Cir. 1995), and Bauchman v. West High Sch.,

12   132 F.3d 542 (10th Cir. 1997) is unavailing.  See Dkt. #25 at 18-23.  First, not only is Stratechuk

13   unpublished, but it also addressed a motion to dismiss for failure to state a claim.  Stratechuk,

14   200 Fed. Appx. at 94.  In reversing the district court, the Third Circuit simply held that a claim

15   alleging that "a categorical ban on exclusively religious music, enacted with the express purpose

16   of sending a message of disapproval of religion," was not subject to dismissal on a Fed. R. Civ.

17   P. 12(b)(6) motion.  Id.  Duncanville is also distinguishable here because, on a motion for an

18   injunction, the case addressed the issue of whether vocal performances of the choral song "The

19   Lord Bless You and Keep You" at choir performances constituted impermissible endorsement of

20   religion.  Duncanville Indep. Sch. Dist., 70 F.3d at 407.  The holding of Duncanville did not

21   concern a "hostility to religion" claim like the one asserted by plaintiff in this case, and also

22   Duncanville addressed the use of the music as a school chorus' "theme" song – it did not

23   consider a performance of the song in the graduation context.  Id.  Notably, the Wind Ensemble

24   here was allowed to perform "Ave Maria" at a music concert.  See Dkt. #19, Ex. A (Moffat

25   Dep.) at 36:14-23.  The specific prohibition in this case occurred in the graduation context.

26   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT
     AND DENYING PLAINTIFF'S CROSS-
     MOTION FOR SUMMARY JUDGMENT                    -25-

1    Similarly, in <u>Bauchman</u>, the Tenth Circuit did not consider a hostility toward religion

2    Establishment Clause claim or address the graduation context.  <u>Bauchman</u>, 132 F.3d at 548, 550

3    (dismissing as moot appeal No. 95-4084 concerning the choir's performance at graduation).

4    Significantly in <u>Bauchman</u>, the Tenth Circuit prohibited the choir's performance of "The Lord

5    Bless You and Keep You" and "Friends" at the 1995 graduation ceremony pending appeal.  <u>Id.</u>

6    at 547 n.4 ("Ms. Bauchman also requested an injunction pending appeal, which we granted,

7    <u>thereby enjoining the singing of two songs</u>, "The Lord Bless You and Keep You" and "Friends,"

8    by the Choir <u>at West High School's 1995 graduation ceremonies</u>.") (emphasis added).

9         Similarly, under rational basis scrutiny, the Court also concludes that plaintiff is entitled

10   to qualified immunity on plaintiff's Equal Protection claim because there is no clearly

11   established authority holding that the Supreme Court's "class of one" jurisprudence applies to

12   the context of this case.  To the contrary, the Ninth Circuit has previously suggested in its Equal

13   Protection jurisprudence that "trying to avoid establishment clause problems" is a "legitimate

14   purpose" so long as the action taken rationally furthers that purpose.  <u>See</u> <u>Christian Science</u>

15   <u>Reading Room Jointly Maintained v. City & County of San Francisco</u>, 784 F.2d 1010, 1013 (9th

16   Cir. 1986) (holding, however, that the action taken did not rationally further the purpose of

17   remedying an Establishment Clause violation), <u>rehearing en banc denied</u>, 807 F.2d 1466, 1468

18   n.2 (9th Cir. 1987) (stating that "[t]he panel conceded that trying to avoid establishment clause

19   problems was a legitimate purpose.") (Norris, J., dissenting).  In this case, the Court finds that

20   defendant's action was rational and furthered the purpose of avoiding Establishment Clause

21   problems where the performance of "Ave Maria" would have borne the School District's

22   imprimatur at the 2006 JHS graduation ceremony.  As the Supreme Court has emphasized,

23   "[e]veryone knows that in our society and in our culture high school graduation is one of life's

24   most significant occasions. . . .  Graduation is a time for family and those closest to the student

25

26   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT
     AND DENYING PLAINTIFF'S CROSS-
     MOTION FOR SUMMARY JUDGMENT                    -26-

to celebrate success and express mutual wishes of gratitude and respect[.]" <u>Lee</u>, 505 U.S. at 595. In light of the significance of graduation, it is rational that school administrators would strive to avoid things that offend in order to structure a ceremony for <u>all</u> students and families.

### 3.    Municipal liability

Plaintiff's complaint under 28 U.S.C. § 1983 is against defendant Dr. Carol Whitehead as both an "individual" and in her "official capacity as the Superintendent of Everett School District No. 2." <u>See</u> Dkt. #1. Both parties agree that suing defendant in her "official capacity" is functionally equivalent to a claim against the Everett School District. <u>See</u> Dkt. #25 at 5 ("The claim against the Defendant in her official capacity is the functional equivalent of a claim against the School District[.]"); Dkt. #32 at 2 ("Dr. Whitehead does not dispute that the suit against her in her official capacity is, in reality, a suit against the Everett School District."); <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991) ("A suit against a governmental officer in his official capacity is equivalent to a suit against the governmental entity itself.").

In order for plaintiff to support a municipal liability claim against defendant under § 1983, however, plaintiff must establish that she was denied a constitutional right. <u>See</u> <u>Miller v. Cal. Dep't of Soc. Serv.</u>, 355 F.3d 1172, 1176-77 (9th Cir. 2004) ("Because [plaintiffs] have failed to establish a constitutional right of which they were deprived, the district court properly determined that the [plaintiffs] established no claim against Yuba County.") (citing <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831, 835 (9th Cir. 1996)); <u>see also</u> <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1474 (9th Cir. 1991) ("To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived[.]") (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 389-91 (1989)). Given the Court's conclusion above in Section II.B.2.a that plaintiff was not deprived of a constitutional right, the Court grants defendant's motion for summary judgment on

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT          -27-

1  all claims against the Everett School District.[22]

2  ### III.  CONCLUSION

3       For all of the foregoing reasons, "Defendant's Motion for Summary Judgment" (Dkt. #8)

4  is GRANTED and "Plaintiff Nurre's Motion for Summary Judgment Under CR 56(A)" (Dkt.

5  #17) is DENIED.

6

7       DATED this 20th day of September, 2007.

8

9                                    *MNr S Lasnik*

10                                   Robert S. Lasnik
                                     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22  ─────────────────────
23       [22]  For this reason, the Court does not need to reach the issue of whether defendant had the "final
    policy making authority" necessary to subject the School District to liability under 28 U.S.C. § 1983.  See
24  City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion) ("[O]nly those municipal
    officials who have 'final policymaking authority' may by their actions subject the government to § 1983
25  liability."); Dkt. #34 (Order Requesting Supplemental Briefing).

26  ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT
    AND DENYING PLAINTIFF'S CROSS-
    MOTION FOR SUMMARY JUDGMENT                    -28-